<hr/>

(20 App. Div. 12.)

### VILLAGE OF ARVERNE–BY–THE–SEA v. SHEPARD et al.

.(Supreme Court, Appellate Division, Second Department. July 13, 1897.)

INCORPORATED VILLAGE—ISSUE OF BONDS.

> The distinction between the ordinary and extraordinary expenditures au-
> thorized to be made by incorporated villages by Laws 1870, c. 291, is not
> in their nature, but in their amount; and upon a vote of the electors of the
> village, duly taken, bonds might be issued under said act for any ex-
> penditure, for a village purpose, exceeding $500 in amount.

Submission of controversy upon a statement of facts agreed upon
by the parties between the village of Arverne-by-the-Sea and Edward
D. Shepard and August T. Post.   Judgment directed for plaintiff.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and BRADLEY, JJ.

John J. Lenehan, for plaintiff.

Appleton L. Clark, for defendant.

BRADLEY, J.   The subject of the controversy relates to the power
of the plaintiff, as a municipal corporation, to incur the liability rep-
resented by its bonds of the par value of $113,000, issued in June
last.   Following an affirmative majority vote at a village election held
on the 5th of that month, upon resolutions presented, the trustees,
having issued the bonds, sold them at public sale to the highest
bidder, on June 12, 1897, for $131,788.75, pursuant to notice of sale
duly published.   Such bidder was William E. R. Smith, and the bonds
were duly awarded to him, who deposited the sum of $2,000 on ac-
count thereof.   Subsequently Smith, with the consent of the plain-
tiff's trustees, duly transferred to the defendants · his proposal, bid,
and contract for the bonds, together with his deposit of $2,000; and
they, for a valuable consideration, took and assumed all the rights,
agreements, and liabilities of Smith thereunder.   The bonds, duly
executed, were tendered by the plaintiff to the defendants, and pay-
ment of the balance of $129,788.75 and accrued interest demanded,
and they declined to accept the bonds or to pay the balance of the
purchase price therefor, upon advice of attorneys that the village au-
thorities had no power to borrow money and issue bonds for the
purposes mentioned in the resolutions referred to as "extraordinary
expenditures," within the meaning of the provisions of chapter 291,
Laws 1870, and the acts amendatory thereof and supplementary there-
to.   It therefore seems that the power to issue the bonds under that
statute was dependent upon the fact that the purposes for which
the plaintiff, through the action of its trustees, sought to incur such
liability and issue such bonds, came within the meaning of extraor-
dinary, as distinguished from ordinary, expenditures, for which bonds

might be issued, under the provisions of such statute. "If this question is answered in the affirmative, the judgment is to be rendered in favor of the plaintiff, directing the defendants to accept said bonds, and pay to the plaintiff the balance of the contract price;" otherwise judgment is to be rendered in favor of the defendants, and directing the return to them of the sum so deposited. This is the only question submitted by the parties to the court.

The plaintiff, since the year 1895, has been a municipal corporation. It was created and organized as such pursuant to the provisions of the act entitled "An act for the incorporation of villages," passed April 20, 1870, and the acts amendatory thereof and supplementary thereto. The statute provided that "the expenditures of the village shall be denominated 'ordinary expenditures' and 'extraordinary expenditures.'" Laws 1870, c. 291, tit. 4, § 1. "Ordinary expenditures shall be those necessarily incurred to carry out and enforce the rules, by-laws and ordinances which the trustees are authorized to adopt by title 3 of this act, and to give force to the powers therein conferred, except as such expenditures may be specifically enlarged or diminished or controlled by other provisions of this act." Id. § 2. "No ordinary expenditure for any one specific act, object, purpose, or thing, except the lighting of streets, shall exceed the sum of five hundred dollars." Id. § 3, as amended by Laws 1893, c. 400, § 1. The statute also provided that "The trustees shall have power to raise money for an extraordinary expenditure for any village purposes by assessment and tax, by submitting a resolution stating the amount to be raised," etc., "to the annual election, or to a special election, of the legal electors entitled to vote," etc., and upon an affirmative majority vote they might proceed in the manner provided, and when such resolution provided for raising the same in installments the trustees might issue bonds of the village for the amount of such installments, payable, respectively, when such installments were to be raised, with interest not exceeding 6 per cent. per annum. Provision was also made for the manner of selling the bonds, and that they should not be sold for less than par. Id. § 4, as amended by Laws 1884, c. 131, § 1; and Id. § 5, as amended by Laws 1895, c. 879. There is no question here relating to the regularity of the proceedings taken, to their result in issuing the bonds and selling them, and it is conceded that the statute in those respects was strictly pursued, and that such result was legal, and the bonds valid, if the object and purpose of the liability thus created was to raise money for extraordinary expenditures within the meaning of the statute. The purposes sought by the creation of the obligation of the village were (1) the making and improvement of streets in the village, (2) the making and improvement of sidewalks in the village, (3) the construction of a sluice for sewerage purposes, (4) the condemnation for the acquisition of the right to construct such sluice or drain, (5) the opening and extension of Ocean avenue, and (6) constructing culverts and drains. Those contemplated improvements were for village purposes, and in that sense they came within those which may be denominated "extraordinary expenditures," and yet, if they had not exceeded the limitation in amount, they, or some of them, would have come within

such as might have been deemed ordinary expenditures. By reference to the statute it is seen that the powers of trustees of villages were quite specifically recited. Laws 1870, c. 291, tit. 3, § 3, subd. 25, as amended by Laws 1893, c. 212.

It is suggested and urged on the part of the defendant that the class denominated "extraordinary" was distinguished in nature from that of ordinary expenditures. If that view is supported, the bonds in question were issued without authority. In Allen v. Village of Northville, 39 Hun, 240, Mr. Justice Larned said: "It is not the amount, but the nature, of the expenditure which makes it ordinary." Such remark was unnecessary to the result. And Mr. Justice Bockes, in a concurring opinion, expressed a contrary view, and said: "If, in excess of this sum ($500), the expense was an extraordinary expenditure." This, in view of the statute, as shown by its provisions, seems to be the reasonable and necessary meaning of that term. Both classes of expenditures were for the village purposes, and, as has been observed, the statute expressly provided that the extraordinary expenditures might be made "for any village purposes." There does not appear to be any statutory limit to the nature, occasion, or purpose of the expenditures to render them extraordinary further than that they be made for village purposes. And to hold that the distinction between the two classes of expenditures within the contemplation of such statute was in their nature, and not in the amount, would render the provisions of the statute relating to extraordinary expenditures substantially nugatory. The trustees, as administrative officers of the municipal corporation, were vested with certain powers, among which were necessarily some to enable them to raise money for its general purposes. But upon this there was a limitation to what may be termed "ordinary expenses." It was contemplated by the legislature that something beyond this limit upon the power of the trustees would become necessary, and it was therefore provided that the people of the village entitled to exercise the right should, by a majority vote, be permitted to authorize a larger expenditure within and for the purposes specified. This, within the meaning of the statute, constituted an extraordinary expenditure as distinguished from the ordinary one. It was rendered so without reference to its nature, but because it was an expenditure thus provided for beyond the limit in amount prescribed for that which the trustees might provide for without the direction or authority derived from the majority vote of their constituency, taken in the manner prescribed by the statute. No further discussion of this question seems necessary. The court is called upon by the matter submitted to answer the single question, and, if it is determined in the affirmative, to direct judgment for substantially the specific performance of the contract of sale and purchase of the bonds, which contract appears by the agreed statement of facts to have been made and partially performed on June 12, 1897. The time of the making of such contract is particularly referred to because the provisions, original and amendatory, of the general act relating to the incorporation of villages, as they were prior to and up to the 1st day of July, 1897, then ceased to exist, and were repealed by Laws 1897, c. 414, now known as the "Village

656 46 NEW YORK SUPPLEMENT (Sup. Ct.
and 80 New York State Reporter.

Law." If the contract for the sale and purchase of the bonds was effectually made, as is assumed by the parties in the statement of facts presented here, then the obligation created by it was not impaired by the repeal of the statute under which the bonds were issued. Const. U. S. art. 1, § 10. We deal only with the question which the parties have seen fit to submit to the court for determination.

The views, upon the facts presented, lead to the conclusion that the question submitted should be answered in the affirmative, and that judgment be directed accordingly in favor of the plaintiff, without costs. All concur.